UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

CIVIL ACTION NO. 2:24-CV-00005-REW-EBA

MICHAEL ERNEST MOORE,                                    PETITIONER,

V.                    **REPORT AND RECOMMENDATION**

CRAIG HUGHES, *Warden,*
*Southeast State Correctional Complex,*                  RESPONDENT.

*** *** *** ***

**INTRODUCTION**

Michael Ernest Moore, a state prisoner, alleges that his imprisonment is unconstitutional. [R. 1]. Using 28 U.S.C. § 2254 as a vessel, he requests the Court vacate his conviction and order "a new trial with effective counsel." [*Id.* at pg. 27]. The Warden filed an Answer, [R. 16], and the undersigned directed Moore to file a reply in support of his petition. [R. 18]. As of the filing of this Report and Recommendation, Moore has not filed a reply and the time to do so has elapsed. So, the matter is ripe for review and for the reasons explained below, the undersigned will recommend that Moore's § 2254 petition be denied.

**I.  FACTS AND PROCEDURAL HISTORY**

The Kentucky Supreme Court summarized the underlying facts and jury trial with the following:

> In 2009, Appellant, Michael Moore, was living with his parents at their home in Union, Kentucky. Appellant had been prescribed pain medication for years as a result of an employment related back injury. However, Appellant had abused his medication and admitted to being a drug addict. His addiction caused great friction between him and his parents.

Appellant's mother, Madge Moore, suffered from multiple sclerosis. Her illness required her to consume prescribed medication on a daily basis. Ms. Moore would often share some of her pain medication with Appellant. Appellant also stole her medication as well. This angered Appellant's father, Warren Moore, who began keeping some of the medication in a safe located in their home. Warren also stored his wife's pills at his place of employment and on his person. This angered his wife, who believed that she should have total control over her medication.

On the evening of June 12, 2009, Appellant and his parents were arguing over Appellant's continued use of his mother's pills. His parents were also upset with Appellant because he had failed to attend mediation in Georgia concerning his pending divorce. Instead of going to Georgia, Appellant stayed at a Super 8 motel in Florence and got high. The argument on the 12th of June led to a physical altercation between Appellant and his father. Appellant shot his mother and father in the head with his father's pistol. Appellant was also shot in his thigh.

Soon thereafter, Appellant walked outside and into the backyard, and threw the murder weapon onto the roof. Appellant then walked back inside the house and eventually called the police approximately 30–45 minutes after the shooting. Appellant informed the 911 operator that a masked intruder entered the Moore residence, shot him, shot his parents, and then left. Appellant continued to tell this narrative to the police as well as friends and family in the years leading up to trial.

However, Appellant changed his trial theory to self-defense. Appellant testified that his father shot and killed his mother and then shot him in the leg and groin. Appellant stated that he shot his father twice in the head in an attempt to save his own life.

A Boone Circuit Court jury convicted Appellant of two counts of murder, one count of tampering with physical evidence, and one count of falsely reporting an incident. Presented with the option of imposing the death penalty, the jury recommended a sentence of life without the possibility of parole on each murder conviction, five years' imprisonment for the tampering conviction, and twelve months for the false reporting conviction. The trial court sentenced Appellant in accord with the jury's recommendation. . .

*Moore v. Commonwealth*, No. 2014-SC-000023-MR, 2015 WL 4972249, at *1 (Ky. Aug. 20, 2015).

As a matter of right, Moore filed a timely notice of appeal to the Kentucky Supreme Court and raised six issues on appeal: erroneous admission of KRE 404(b) evidence; that the trial court erred in denying his motion to suppress statements he made to the police while he was at the

hospital; that the trial court erroneously denied his motion to dismiss based on an alleged *Brady* violation; that the trial court erred in not excusing Jurors CL and RB for cause; that the Commonwealth improperly cross-examined him at trial; and that the trial court failed to give a missing-evidence instruction. *Id.* at *2–8. The Kentucky Supreme Court analyzed each of these issues and ultimately affirmed Moore's conviction on August 20, 2015. *Id.* at *8. Moore had 90 days from August 20, 2015, to file a petition for writ of certiorari to the Supreme Court of the United States. *See* SUP. CT. R. 13; SUP. CT. R. 30. He did not do so. Thus, Moore's conviction became final on November 18, 2015. 28 U.S.C. § 2244(d)(1)(A) (a judgment becomes final "by the conclusion of direct review or the expiration of the time for seeking such review").

In August of 2016, Moore filed a *pro se* motion in state court to vacate, set aside, or correct his sentence pursuant to KY. R. CRIM. P. 11.42. [R. 16-2 at pg. 508]. The Boone County Circuit Court denied Moore's motion without an evidentiary hearing. [*Id.* at pg. 533]. Moore filed a timely appeal to the Kentucky Court of Appeals and asserted four arguments on his appeal: "1) that trial counsel was ineffective in failing to seek the suppression of witness testimony; 2) that trial counsel was ineffective in failing to call an expert witness; 3) that appellate counsel was ineffective in failing to raise on appeal the circuit court's denial of a continuance; and, 4) that cumulative errors are sufficient to vacate his conviction and sentence." *Moore v. Commonwealth*, No. 2022-CA-0545-MR, 2023 WL 3134008, at *2 (Ky. Ct. App. Apr. 28, 2023). The Court of Appeals analyzed each of these arguments and affirmed his motion's denial on April 28, 2023. *Id.* at *5. Moore then moved for discretionary review of the Court of Appeals' opinion, which was denied by the Kentucky Supreme Court on December 6, 2023. [R. 16-2 at pg. 693].

On January 11, 2024, Moore filed this Section 2254 petition. [R. 1]. In his petition, Moore asserts 10 different grounds for relief, which include the grounds for relief that were brought before the Kentucky Supreme Court and Court of Appeals. [*See id.*]. Respondent Hughes filed his Answer

to Moore's petition on April 22, 2024. [R. 16]. The undersigned directed Moore to file his Reply

no later than May 22, 2024. [R. 18]. No reply has since been filed with the Court; therefore, the

matter stands ripe for review.

## II.   STANDARD OF REVIEW

This Court is required to review Moore's request for habeas corpus relief pursuant to the

standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The

AEDPA allows state prisoners to seek federal habeas corpus relief on the ground that they are in

custody in violation of the Constitution, law, or treaties of the United States. 28 U.S.C. § 2254(a);

*Reed v. Farley*, 512 U.S. 339, 347 (1994). The AEDPA states:

> An application for writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim—
>
> resulted in a decision that was contrary to, or involved an unreasonable application
> of, clearly established Federal law, as determined by the Supreme Court of the
> United States; or
>
> resulted in a decision that was based on an unreasonable determination of the facts
> in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

The AEDPA mandates that state courts should enjoy the first opportunity to cure a

constitutional claim. This rule stems from the understanding that state courts are obligated to

follow federal law and from the desire for comity between the state and federal court systems.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999). So, federal courts do not analyze a

petitioner's claim *de novo* under Section 2254. That means this Court must grant the state court

deference in reviewing Moore's petition. The state court's factual determinations "are presumed

to be correct. The applicant shall have the burden of proof of rebutting the presumption of

correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). So, the Court must give

complete deference to evidence-supported state court findings of fact pursuant to the presumption

of correctness. *Id.* A state court decision, adjudicated on the merits based on a factual

determination, will not be overturned on factual grounds unless objectively unreasonable

considering the evidence presented in the state-court proceeding. 28 U.S.C. § 2254(d)(2); *Miller-El*

*v. Cockrell*, 537 U.S. 322, 340 (2003). Thus, "a federal habeas court may overturn a state court's

application of federal law only if it is so erroneous that there is no possibility fair-minded jurists

could disagree that the state court's decision conflicts with [the United States Supreme Court's]

precedents." *Nevada v. Jackson*, 569 U.S. 505, 508 (2013) (per curiam) (internal quotation marks

omitted). Note that "circuit precedent does not constitute clearly established federal law" under

the AEDPA. *Parker v. Matthews*, 567 U.S. 37, 48 (2012).

In sum, the AEDPA creates "a highly deferential standard for evaluating state-court

rulings," and demands that "state-court decisions be given the benefit of the doubt." *Davis v.*

*Lafler*, 658 F.3d 525, 530 (6th Cir. 2011). The AEDPA erected a "formidable barrier" to federal

habeas corpus relief for those state prisoners whose claims were fully adjudicated in state court,

requiring they show that the state court's ruling "was so lacking in justification that there was an

error . . . beyond any possibility for fair-minded disagreement." *Burt v. Titlow*, 571 U.S. 12, 20

(2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[t]he question

under AEDPA is not whether a federal court believes the state court's determination was incorrect

but whether that determination was unreasonable—a substantially higher threshold." *Schriro v.*

*Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). In

determining whether an evidentiary hearing is warranted to adjudicate a section 2254 petition, "a

federal court must consider whether such a hearing could enable an applicant to prove the petition's

factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* "It

follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas

relief, a district court is not required to hold an evidentiary hearing." *Id.* Finally, "[a] habeas court may not grant relief unless the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Mason v. Brunsman*, 483 F. App'x 122, 128 (6th Cir. 2012) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

## III.    ANALYSIS

### A

While there are procedural requirements, such as the timeliness of the petition, that must be met before the Court will analyze the merits of § 2254 petition, Respondent Hughes has conceded that the petition is timely. [*See* R. 16 at pg. 5]. Therefore, the undersigned will analyze the merits of Moore's petition, beginning with the claims Moore originally brought before the Kentucky Supreme Court on his direct appeal before discussing his Ineffective Assistance of Counsel (IAC) claims.

However, it is worth noting before delving into this analysis that the Court will not consider any portions of Moore's claims for relief that are procedurally defaulted. "For a state petitioner to present his claims in federal habeas, he must first exhaust his state remedies and 'meet the State's procedural requirements for presenting his federal claims.'" *Smith v. Warden, Toledo Corr. Inst.*, 780 F. App'x 208, 218 (6th Cir. 2019) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729–32 (1991)). Otherwise, "[f]ederal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or that failing to review the claim would result in a fundamental miscarriage of justice." *Williams v. Anderson*, 460 F.3d 789, 805–06 (6th Cir. 2006) (citing *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006)). A claim may be procedurally defaulted in two ways: 1) the petitioner failed "to comply with state procedural rules in presenting his claim to the appropriate state court" and 2) "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue

that claim through the state's 'ordinary appellate review procedures.'" *Id.* at 806 (citations omitted). Finally, "[e]ven the same claim, if raised on different grounds, is not exhausted for the purpose of federal habeas review." *Rayner v. Mills*, 685 F.3d 631, 643 (6th Cir. 2012) (citing *Lyons v. Stovall*, 188 F.3d 327, 332–33 (6th Cir.1999)).

Here, it appears that Moore presented most, if not all, of his claims for relief in state court before filing his § 2254 petition. [*See* R. 16-2]. However, to the extent that Moore's claims are being presented on new or additional grounds, he has failed to show cause for the default and prejudice therefrom on these new grounds. Therefore, the undersigned will focus his analysis on those claims and the portions of Moore's arguments that have not been procedurally defaulted.

### 1. Introduction of "Prior Bad Acts" Evidence.

Moore first argues that the trial court violated KRE 404(b) by allowing the introduction of prior bad acts evidence at trial. [R. 1 at pg. 5]. Specifically, Moore states that:

> The Commonwealth filed notice pursuant to KRE 404(c) of introducing a multitude of character evidence. KRE 404(b) is a rule of general exclusion, with only certain specific exceptions. Prior bad acts are never admissible unless certain exceptions, well defined by the rule, apply. These exceptions must be closely watched and strictly enforced because of the dangerous quality and prejudicial consequences of this kind of evidence. The burden is on the Commonwealth to establish a proper basis before admitting evidence of collateral criminal activity. If evidence of other bad acts falls within an exception, the admissibility of such evidence is reviewed under a three-part test for relevance, probativeness, and prejudice.

[*Id.*]. While Moore does not explicitly state what pieces of evidence he is referring to for this claim, it is reasonable to presume that he is referring to the pieces of evidence that were brought up in his direct appeal to the Kentucky Supreme Court: 1) a note that was written by Moore's father stating "Michael—if even a single pill is missing from the safe, [d]on't ever come back—you'll never be welcome again."; 2) evidence relating to Moore forging checks from his ex-girlfriend's account; 3) evidence related to his employment history; and 4) evidence relating to his drug use and addiction and his practice of "doctor shopping." *See Moore v. Commonwealth*, No. 2014-SC-

000023-MR, 2015 WL 4972249, at *2–4 (Ky. Aug. 20, 2015). Ultimately, the Supreme Court

found that the trial court did not err in allowing the admission of this evidence. *Id.*

> Pursuant to KRE 404(b):
>
> Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:
>
> (1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or
>
> (2) If so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party.

Under Kentucky law and KRE 404(b)(1), evidence that would otherwise constitute evidence of

prior bad acts may be admissible if it is introduced for a purpose other than proving one's character,

such as motive, opportunity, intent, knowledge, identity, plan, or absence of mistake. *See Meece*

*v. Commonwealth*, 348 S.W.3d 627, 662 (Ky. 2011). To determine if evidence relating to other

bad acts is admissible, Kentucky courts are to use a three-part test to find if the evidence in question

is relevant, probative, and not unduly prejudicial. *Id.*; *see also Bell v. Commonwealth*, 875 S.W.

2d 882, 889–91 (Ky. 1994).

Here, the Kentucky Supreme Court applied the *Bell* test factors and discussed each of the

contested pieces of evidence, finding that the materials were properly admitted at trial. *See Moore*,

2015 WL 4972249 at *2–4. Nothing in the Kentucky Supreme Court's decision nor in Moore's

application indicates that the court's ruling on this issue was unreasonable or even incorrect. In

fact, as Respondent Hughes points out, "Moore introduced evidence in his case in chief concerning

most of the evidence that he has complained about. In particular, he testified to the alleged 'bad

acts' when he took the stand on his behalf. . . By introducing and relying on the very evidence to

which he objected on appeal, and now in his habeas petition, Moore waived his objection to the

introduction of this evidence." [R. 16 at pg. 18]. Even beyond this waiver and even if the undersigned were to agree that the admission of this evidence was in error, it is well-settled that "[f]ederal courts sitting in habeas corpus actions are not concerned with evidentiary rulings of state trial courts unless such rulings result in the denial of due process." *Webster v. Rees*, 729 F.2d 1078, 1080 (6th Cir. 1984). Nothing has been presented to demonstrate that the admission of this evidence violated Moore's due process rights or made the trial so unfair as to deny him his rights. Finally, as the Kentucky Supreme Court noted, any error in admitting this evidence would be harmless when considered alongside Moore's self-defense theory and evidence of his guilt. *See Moore*, 2015 WL 4972249 at *4. Therefore, Moore's argument on this claim must fail.

### 2. The Admission of Moore's Un-Redacted Statements.

Moore next argues that the trial court erred in allowing the admission of un-redacted portions of his statements to the police while he was in the hospital. [R. 1 at pg. 7]. Petitioner explains that:

> Appellant moved to redact portions of his recorded statements to police. The trial court redacted some of the statements, others were not redacted from the transcripts or audio recordings. Certain statements were made after Appellant's assertion of right to counsel. The trial court also admonished the jury that statements other than those made by Appellant were not evidence. However, this didn't cure the undue prejudice to Appellant and his trial because the cumulative irrelevant and highly prejudicial statements introduced to the jury. Repeated statements by Detectives could be taken as an appeal to local prejudice. These statements often were not premised on fact and the jury would not follow the court's admonitions and devastating evidence being introduced in Appellants case.

[*Id.*]. The Supreme Court explained the context of these statements as follows:

> While recovering from his gunshot wound at the University of Cincinnati Hospital, Appellant was approached by Boone County Police Detective Matt Mullins on June 13, 2009, and again on June 14, 2009. Appellant takes primary issue with the June 13th interview, where Detective Mullins questioned Appellant regarding his parent's murder and possible suspects. Detective Mullins did not inform Appellant of his Miranda rights. After much discussion, Appellant eventually stated, "I want an attorney. I'm done. Thank you." Detective Mullins continued his questioning. After additional protest, Appellant asked the detective to come back later.

*Moore*, 2015 WL 4972249 at *5. The Supreme Court found that Moore was not subject to a custodial interrogation because he was not in custody and was thus not entitled to a *Miranda* instruction. The Supreme Court further held that any error in allowing these statements to be introduced at trial was harmless and that "none of the contested statements could have prejudicially impacted the jury's verdict." *Id.*

The Fifth Amendment to the U.S. Constitution protects individuals from being compelled to incriminate themselves or otherwise "be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Supreme Court has famously explained that pursuant to the Fifth Amendment, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "A custodial interrogation occurs when a person has been taken into custody or otherwise deprived of his freedom of action in any significant way and a law enforcement officer questions that person." *United States v. Square*, 790 F. Supp. 2d 626, 651 (N.D. Ohio 2011) (citing *Miranda*, 384 U.S. at 444). If a suspect is questioned during a custodial interrogation, the person must first be advised of their *Miranda* rights, which include the right to remain silent, that any statement they make may be used against them in a court of law, and that they have the right to an attorney. *Id.* Failure to advise a suspect of these rights may result in the prosecution's inability to use these statements at trial.

Here, the Kentucky Supreme Court found that the police's questioning of Moore while he was at the hospital did not amount to a custodial interrogation because he was free of any arrest restraints and he was able to return home after his treatment was completed. *Moore*, 2015 WL 4972249 at *5. This analysis appears to be in-line with pre-existing Kentucky state caselaw. *See*

*Grigs v. Commonwealth*, No. 2006-SC-000846-MR, 2008 WL 1851080, at *5 (Ky. Apr. 24, 2008) ("Other courts have held, and we agree, that the restraint giving rise to 'custody' must be restraint instigated by the police, and for that reason the majority rule is that confinement to a hospital bed does not, by itself, amount to 'custody' for *Miranda* purposes."). Further, the Kentucky Supreme Court also held that even if Moore had been subject to a custodial interrogation, any error in admitting the contested statements was harmless because "none of the contested statements could have prejudicially impacted the jury's verdict." *Moore*, 2015 WL 4972249 at *5.

Moore has presented no evidence to rebut the Kentucky Supreme Court's analysis or to otherwise show that the court's analysis was unreasonable. Even if the Court accepted that admitting the statements was erroneous, nothing has been presented to indicate that a substantial effect on the jury's verdict, especially when one considers the evidence that was presented as to Moore's guilt. As Respondent Hughes explains, "[i]n light of all the testimony about the admittedly false story about the home invasion, and Moore's own admission that he lied for years to the police, family, and friends about the home invasion, there is no reasonable possibility that the introduction of Moore's own statements to police (made at the hospital) had a 'substantial and injurious effect or influence" on the verdict.'" [R. 16 at pg. 24]. Therefore, this argument must also fail.

### 3. Moore's Discovery-Violation Claim.

Moore next claims that the trial court abused its discretion by permitting "the Commonwealth to "conceal exculpatory material for four years without sanctions." [R. 1 at pg. 8]. Moore specifically alleges that:

> RCr 7.24 sets forth the discovery process, subsection (1)(b) requires the Commonwealth to provide the defense team results, scientific tests or experiments made in connection with the particular case that are known by the Commonwealth. It wasn't until the defense eventually received lab notes and case jacket on March 25, 2013 they discovered the Commonwealth had concealed crucial exculpatory

evidence. That information was that there was a third unknown DNA profile located on the grip on the murder weapon in the case.

[*Id.*]. The Kentucky Supreme Court explained the circumstances surrounding this evidence as follows:

> Appellant was indicted in 2009 and tried in September of 2013. Appellant contends that his counsel received a DNA report from the Commonwealth on February 12, 2010. That report analyzed the pistol grip of the murder weapon and revealed that it contained the DNA of at least two individuals. The report stated that, "given the close genetic relationship between Michael Moore and Warren Moore, no conclusions could be drawn as to their presence in this mixture."
>
> A subsequent DNA report was prepared in 2012. Appellant contends that he did not receive that report until 2013, and only upon the request of counsel. He claims that the 2012 report demonstrated that there was a third "unknown" DNA profile located on the grip of the murder weapon. Appellant argues that this evidence was exculpatory because it tended to prove his initial narrative—that an unknown individual killed his parents, shot him, and then left.

*Moore*, 2015 WL 4972249 at *6.

To begin with, as the Sixth Circuit has explained in the past, there is no constitutional right to discovery in a criminal case. *See Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002); *see also Bowling v. Haeberlin*, No. CIV. 03-28-ART, 2012 WL 4498647, at *31 (E.D. Ky. Sept. 28, 2012), *on reconsideration in part*, No. CIV. 03-28-ART, 2013 WL 1182515 (E.D. Ky. Mar. 21, 2013)). In other words, "[a]n alleged violation of state discovery rules is not cognizable in a habeas corpus action." *Williams v. Campbell*, No. 16-2753, 2017 WL 6543804, at *2 (6th Cir. June 28, 2017). Therefore, any claim for relief based on a violation of Kentucky's discovery rules must fail.

Moore's claims, however, also implicate the *Brady* rule. As the Sixth Circuit has indicated, "*Brady* established that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *Spirko v. Mitchell*, 368 F.3d 603, 609 (6th Cir. 2004) (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). "*Brady* does not grant

broad discovery powers to the defendant, but is instead intended only to ensure that the defendant has access to impeachment evidence and evidence favorable to him, suppression of which would deprive him of a fair trial." *Id.* (citing *United States v. Bagley*, 473 U.S. 667, 675 (1985)). When a *Brady* violation is alleged, "[r]eversal is only required, therefore, where 'there is a 'reasonable probability' that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome.'" *United States v. Mullins*, 22 F.3d 1365, 1371 (6th Cir. 1994) (quoting *Bagley*, 473 U.S. at 682). "Furthermore, the *Brady* rule only applies to 'the discovery, *after trial*, of information which had been known to the prosecution but *unknown to the defense*.'" *Id.* (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)) (emphasis in original).

Here, the Kentucky Supreme Court held that no *Brady* violation occurred in this case because Moore himself acknowledged that he received the 2012 report prior to his trial. *Moore*, 2015 WL 4972249 at *6. The Supreme Court also explained that Moore had failed to show how he was prejudiced from the belated disclosure of this report because "[a]ny prejudice that could have possibly occurred was obviated when Appellant changed his trial strategy to self-defense. He admitted that he shot his father with the murder weapon that was the subject of the DNA reports. Neither report contained exculpatory evidence, certainly not in light of Appellant's admissions." *Id.* Moore has presented no evidence to refute this analysis or that any exculpatory evidence was withheld prior to his trial. Therefore, Moore has failed to demonstrate that a *Brady* violation occurred or that he was otherwise prejudiced from the late disclosure of this 2012 report and thus this argument must also fail.

**4. Juror Selection Claims.**

Moore's next argument is that the trial court erred in failing to excuse certain jurors for cause. [R. 1 at pg. 10]. As Moore explains:

> In individual voir dire, a potential juror testified that if you intentionally take the life of another human being, the death penalty is appropriate. This juror also testified that whether a person was intoxicated at the time or had experienced a bad childhood in poverty made no difference. The only thing the juror believed would make the death penalty not [appropriate] is self defense or was insane. Defense counsel moved to strike the juror for cause and the motion was denied because the trial court thought it "heard two different sets of answers."

[*Id.*]. The Kentucky Supreme Court explained in its opinion that Moore took issue with Jurors CL and RB and that "[a]ccording to Appellant, Juror CL stated that he could not consider mitigation evidence such as a bad upbringing or intoxication. *See Fugett v. Commonwealth*, 250 S.W.3d 604 (Ky.2008). Juror RB stated that he fundamentally subscribed to 'an eye for an eye and a tooth for a tooth,' and that he could not consider a sentence in which the defendant could get parole for an aggravated, intentional murder with no defense." *Moore*, 2015 WL 4972249 at *7. Ultimately, Defense counsel during Moore's trial exercised two preemptory challenges to strike jurors CL and RB and noted that, if she had been able to, she would have used a peremptory strike on Juror 11, who did end up sitting on the jury. *Id.* at *6.

The Sixth Circuit has previously held that "[i]n a death penalty case, 'a juror may not be challenged for cause based on his views about capital punishment unless those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and oath.'" *Trimble v. Bobby*, 804 F.3d 767, 777–78 (6th Cir. 2015) (quoting *Adams v. Texas*, 448 U.S. 38, 45 (1980)). In fact, the Sixth Circuit has acknowledged that a trial court's determination of a juror's impartiality is afforded a special degree of deference. *Id.* at 778. As the Sixth Circuit explains:

> ***A federal court can overturn a trial judge's finding of juror impartiality only where manifest error is shown.*** *Patton*, 467 U.S. at 1031, 104 S.Ct. 2885. "[O]ur review is deferential, respecting the trial judge's proximity to the venire and the determinations of credibility and demeanor that voir dire involves." *Wolfe v. Brigano*, 232 F.3d 499, 502 (6th Cir.2000). "Reviewing courts are properly resistant to second-guessing the trial judge's estimation of a juror's impartiality, for that judge's appraisal is ordinarily influenced by a host of factors impossible to

capture fully in the record—among them, the prospective juror's inflection, sincerity, demeanor, candor, body language, and apprehension of duty." *Skilling v. United States*, 561 U.S. 358, 386–87, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010). Further, we must keep in mind that "it is not uncommon for jurors to express themselves in contradictory and ambiguous ways, both due to unfamiliarity with courtroom proceedings and cross-examination tactics and because the jury pool runs the spectrum in terms of education and experience." *White*, 431 F.3d at 537.

*Id.* (emphasis added).

Here, both Jurors CL and RB were questioned extensively on their personal beliefs regarding the death penalty. [*See* R. 16 at pgs. 28–30]. The Kentucky Supreme Court considered the jurors' answers and explained that "[t]he critical test which each juror must pass is the ability to subjugate their belief system to the law and instructions of the court. That examination was successfully completed in this case." *Moore*, 2015 WL 4972249 at *7. The Supreme Court then held that "[t]he trial court expressly asked both jurors whether they would consider mitigation evidence, the full range of potential penalties, and could heed the court's instructions. Both jurors responded in the affirmative. Therefore, the court did not abuse its discretion here." *Id.* Nothing in the record indicates that the trial court or the Supreme Court's rulings on this issue were incorrect. Further, Moore has not presented any evidence to show that these rulings constitute manifest error or that the Supreme Court's decision was an unreasonable application of federal law, especially given the special degree of deference given to the trial court for this issue. Therefore, this argument must also fail.

### 5. The Prosecution's Cross-Examination of Moore.

Moore's next argument is that "the Commonwealth improperly elicited information that appellant had not volunteered his defense to police at any time prior to trial in violation of the Fifth Amendment which also constituted improper burden shifting." [R. 1 at pg. 12]. Moore avers that:

> Both the U.S. Constitution and the Kentucky Constitution encompass Appellants right to remain silent when question[ed] by police. The Commonwealth is prohibited from introducing evidence or commenting in any manner on a

defendant's silence once he has been informed of his and taken into custody. Appellant initially spoke to police but remained silent until trial. The Commonwealth asked if Appellant terminated the conversation with police when he initially spoke to them and he said he had. They then asked if in the four years since then if he had ever contacted detectives and told them the story he had just told the jury, he replied he had not. The Commonwealth then asked if he ever communicated his defense to anyone (which would include police) until shortly before trial and Appellant said he had not. Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, Section Seven of the Kentucky Constitution, in order to attain a criminal conviction the Commonwealth is required to prove every element of s criminal offense beyond a reasonable doubt and that burden of proof cannot be shifted to an accused nor can an accused be required to prove his innocence. As the presumption of innocence mandates that the burden of proof and production fall on the Commonwealth, any burden shifting to the Appellant in a criminal trial would be unjust.

[*Id.* at pgs. 12, 31]. As Respondent Hughes explains, Moore has essentially argued that the "admission of evidence that his initial version of events was false constitutes an improper comment on his right to remain silent." [R. 16 at pg. 37].

"[W]hen a defendant takes the stand, 'his credibility may be impeached and his testimony assailed like that of any other witness.'" *Portuondo v. Agard*, 529 U.S. 61, 69 (2000) (quoting *Brown v. United States*, 356 U.S. 148, 154 (1958)). The reasoning behind this rule is that when a defendant "assumes the role of a witness, the rules that generally apply to other witnesses—rules that serve the truth-seeking function of the trial—are generally applicable to him as well.'" *Id.* (quoting *Perry v. Leeke*, 488 U.S. 272, 282 (1989)). In other words, '"[o]nce a defendant takes the stand, he is " 'subject to cross-examination impeaching his credibility just like any other witness.' "' *Id.* at 70 (quoting *Jenkins v. Anderson*, 447 U.S. 231, 235–36 (1980)).

Here, the Kentucky Supreme Court found that the questions posed to Moore on cross-examination were proper because "Appellant in the present case was cross-examined as to his previous statements to police, which directly contradicted his trial defense. Appellant was not questioned as to his pre or post-arrest silence. Thus, there was no error here." *Moore*, 2015 WL 4972249 at *7. As Respondent points out, these questions were to impeach Moore's prior

statements to the police and others and therefore directly related to his credibility as a witness. [R. 16 at pg. 37]. Once Moore decided to take the stand, he was subject to the same rules that would apply to any other witness and questions on his credibility and past contradictory statements were therefore fair game. Moore has failed to present any evidence that these questions improperly touched upon any pre- or post-arrest silence or that these other questions were otherwise improper. Accordingly, this argument must also fail.

### 6. Missing-Evidence Instruction.

Next, Moore argues that he was entitled to a missing-evidence instruction at trial. [R. 1 at pg. 14]. Moore explains the following:

> A section of drywall and red carpet runner from the lower stairwell where Warren Moore was shot and laying in blood were exclusively in the possession of the Commonwealth after the incident at issue. These items contained blood and tissue matter. These items were also rendered unavailable for the defense and unaccountably went missing. The defense requested a missing evidence instruction be included in the guilt phase instructions. These items contained material and exculpatory evidence as there were found next to and underneath Warren Moore respectively. These items contained blood and tissue matter of a probative value. The defense never had an opportunity to test these items. A person accused of a crime has a constitutionally guaranteed access to evidence that requires the state to preserve evidence so that the due process right of the accused to present a complete defense can be safeguarded. The government is required to provide to the defense all evidence suggestive of innocence, including tentative or unsure evidence. The purpose of a missing evidence instruction is to cure any Due process violation [attributable] to the loss or destruction of exculpatory evidence by a less onerous remedy than dismissal or the suppression of relevant evidence. Appellant was entitled to the requested instruction.

[*Id.* at pgs. 14, 31–32].

The Sixth Circuit has previously explained the standard the Supreme Court set forth in *Arizona v. Youngblood*, 488 U.S. 51 (1988) that to receive a missing-evidence instruction at trial, a defendant must show bad faith on the part of the government in the destruction of this useful evidence to prove that their due process rights have been violated. *See Bailey v. Smith*, 492 F. App'x 619, 628 (6th Cir. 2012). In other words, "'[t]he presence or absence of bad faith by the

[government] for purposes of the Due Process Clause must necessarily turn on the [government's] knowledge of the exculpatory value of the evidence at the time it was lost or destroyed.'" *Id.* (quoting *Youngblood*, 488 U.S. at 56). "Further, 'where the government is negligent, even grossly negligent, in failing to preserve potential exculpatory evidence, the bad faith requirement is not satisfied.'" *Id.* (quoting *United States v. Wright*, 260 F.3d 568, 570 (6th Cir.2001)).

Here, the Supreme Court of Kentucky determined that a missing-evidence instruction was not warranted because Moore failed to demonstrate any bad faith on the part of the Commonwealth or that the missing evidence was potentially exculpatory. *Moore*, 2015 WL 4972249 at *8. As Respondent Hughes explains, Defense counsel conceded that the Commonwealth had not acted in bad faith in failing to preserve this evidence nor was Defense counsel able to demonstrate how this evidence would have been exculpatory. [R. 16 at pgs. 39–40]. Moore's petition likewise does not contain any indication of how this evidence would have been exculpatory or how a missing-evidence instruction would have changed the verdict in this matter. Based on the lack of evidence that the Commonwealth acted in bad faith or that the evidence in question was exculpatory, the Supreme Court of Kentucky's ruling cannot be considered unreasonable. Therefore, this argument must also fail.

### 7. IAC Claim Relating to Sheri Kenneda's Testimony.

Moore's next claim, and the ones following this one, relate to Petitioner's arguments that he received IAC either during his trial or during his subsequent appeal. For his seventh claim, Moore argues that he received IAC because his trial counsel failed to suppress Sheri Kenneda's testimony. [R. 1 at pg. 16]. Moore specifically avers the following:

> The testimony of Sheri Kenneda should have been suppressed, namely the testimony of e-mail conversations between Kenneda and Appellant's father. The Commonwealths theory was based on Appellant's drug use and the relationship between Appellant and his father had reached a boiling point. Detectives in this case from the beginning stages used intimidation and fear to persuade Kenneda

> into providing her statement to police and possibly later testimony at trial.
> Detectives sought to turn Kenneda against Appellant by stating Appellant was
> dangerous, a liar and more than likely did the crime. Detectives went on to
> threaten Kenneda with a charged crime and revealed specific evidence that made
> Appellant look guilty. On at least two occasions detectives used fear and
> intimidation tactics to force Kenneda into carrying a tape recorder in her purse in
> an attempt to record her conversations with the Appellant while he was still in the
> hospital. It is clear from Kenneda's and the detective's actions that Kenneda's
> statements would have favored the Appellant and she would have most likely
> been a witness for the defense.

[*Id.* at pgs. 16, 32].

To successfully assert an IAC claim, Moore must show two essential elements for each claim: (1) deficient performance by counsel and (2) how "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (stating that "[u]nless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.").

First, regarding deficient performance, reviewing courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance." *Id.* at 689. To show that representation fell below an objective standard of reasonableness, Moore must articulate specific acts or omissions that demonstrate how counsel's performance fell "outside the wide range of professionally competent assistance." *Id.* at 690. In other words, Moore bears the burden of showing that his counsel "made errors so serious that the counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. While reviewing his ineffective assistance of counsel claim and sub-claims, the Court must make "every effort" to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

Second, Moore must also establish prejudice by showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of his proceedings would have

been different. *Id.* at 694–95. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (citing *Strickland*, 466 U.S. at 693)). "When deciding ineffective-assistance claims, courts need not address both components of the [deficient performance and prejudice] inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Strickland*, 466 U.S. at 697. Further, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 691). "Counsel is constitutionally ineffective only if performance below the professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (citing *Strickland*, 466 U.S. at 668). It is also worth noting that the Sixth Circuit has explained that "[w]here a state court has adjudicated an ineffective-assistance-of-counsel claim on the merits, we use a 'doubly deferential standard of review that gives both the state court and the defense attorney the benefit of the doubt.'. . . In other words, rather than simply examining whether counsel satisfied *Strickland*'s deferential standard, we ask 'whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Carter v. Bogan*, 900 F.3d 754, 773 (6th Cir. 2018) (internal citations omitted).

Moore's arguments on this testimony were previously examined by the Kentucky Court of Appeals and the court explained Moore's theory that "the police threatened Kenneda in order to obtain favorable testimony, and that secret recordings made by Kenneda while Appellant was in the hospital would have favored Appellant had the tape recorder not stopped recording." *Moore v. Commonwealth*, No. 2022-CA-0545-MR, 2023 WL 3134008, at *3 (Ky. Ct. App. Apr. 28, 2023), *review denied* (Dec. 6, 2023). However, Moore failed to specify what parts of Kenneda's testimony he found objectionable and only argued in general terms that his counsel was ineffective for failing

to suppress this testimony. *Id.* Further, the Court of Appeals noted that "Appellant's counsel objected multiple times to the introduction of testimony from both Kenneda and Moore" and that Moore "admitted evidence of the type to which he now objects." *Id.* The Court of Appeals thus ruled that "[s]ince Appellant's counsel repeatedly objected to the testimony of Kenneda and Moore, and as Appellant does not now reveal specifically which testimony he finds objectionable nor how the outcome of the proceeding would have been different but for the testimony, *Strickland*, *supra*, we find no error on this issue." *Id.*

Here, Moore appears to reiterate the same vague arguments that he presented to the Court of Appeals. Again, Petitioner Moore does not specifically state what parts of Kenneda's testimony he finds objectionable, nor does he demonstrate how counsel was ineffective, especially considering the fact they did attempt to suppress this testimony for trial. As the trial court stated in its ruling on Moore's RCr 11.42 motion, Kenneda's testimony corroborated Moore's own testimony regarding his struggles with substance abuse and the record did not support Moore's allegations relating to the suppression of Kenneda's testimony. [R. 16-2 at pgs. 515–16]. Moore has therefore failed to demonstrate how trial counsel was ineffective on this point or any prejudice he suffered from this testimony's admission. Thus, this argument must fail.

### 8. IAC Claim Relating to Debi Moore's Testimony.

Like Ground Seven, Moore also claims that trial counsel was ineffective for failing to suppress Debi Moore's testimony. [R. 1 at pg. 18]. Moore avers for this claim that:

> The testimony of Debbie Moore should have been suppressed, namely the testimony of Appellant's drug use and the relationship between Appellant and his father. Appellant informed his counsel that Debbie Moore was monitoring the testimony of witnesses during the trial by live news feed prior to taking the stand herself. Further, Debbie Moore and her husband being intimately involved were taking bets to see if Appellant would take the stand or not. Appellant's brother made a post via Facebook.com that he had lost a bet because Appellant had indeed taken the stand. This post was made after Debbie Moore notified Appellant's brother that Appellant was on the stand giving testimony. Social

media, whether it is news, newspaper and or live feed via websites, gives an accurate and inaccurate description of the trial based on facts and opinions easily swaying someone's feelings about the case and the person standing trial. Debbie Moore was not allowed to attend any proceeding before her testimony specifically for this reason. Once Debbie Moore's actions were discovered, counsel for Appellant should have moved the trial court to disallow testimony from Debbie Moore.

[*Id.* at pgs. 18, 32].

As previously stated, the Court of Appeals ultimately found that "that "[s]ince Appellant's counsel repeatedly objected to the testimony of Kenneda and Moore, and as Appellant does not now reveal specifically which testimony he finds objectionable nor how the outcome of the proceeding would have been different but for the testimony, Strickland, supra, we find no error on this issue." *Moore*, 2023 WL 3134008 at *3. Much like his claim regarding Kenneda's testimony, Moore fails to specifically indicate what testimony he finds objectionable and has failed to indicate how counsel was ineffective in failing to suppress this testimony. As for Moore's claims about social media's possible effect on Debi Moore's testimony, these claims are vague and unsupported by any evidence in the record or in his petition. Again, much like with Kenneda's testimony, Defense counsel objected to the admission of portions of this testimony and Moore has failed to demonstrate how he was prejudiced with the admission of this testimony. Therefore, for the reasons explained for Ground Seven, this argument must also fail.

### 9. IAC Claim Regarding a Mitigation Expert.

Moore next claims that trial counsel provided ineffective assistance by failing to call a mitigation expert to testify on the effects of long-term drug use and how Petitioner's drug use may have affected during the relevant events of this case. [R. 1 at pgs. 20, 33]. Specifically, Moore argues that:

The defense counsel was awarded funds to obtain an expert witness. An expert named Wilkie Wilson was willing to fly in from Duke University to testify about the effects of drugs used by [Moore] and whether his drug use would cause him to

> commit the allegations against him. This expert testimony was vital to the defense
> as it rebutted the Commonwealth's only theory of the case. At one point, defense
> counsel confesses that she "dropped the ball" by not having an expert witness
> ready to testify about [Moore's] drug use and how she wished she had. Defense
> counsel further stated that she underestimated how heavily the Commonwealth
> would rely on [his] drug use.

[*Id.* at pg. 20].

As the Sixth Circuit has acknowledged in the past, "whether to call a witness and how to conduct a witness' testimony are classic questions of trial strategy that merit *Strickland* deference." *Rayborn v. United States*, 489 F. App'x 871, 878 (6th Cir. 2012) (citing *Harrison v. Motley*, 478 F.3d 750, 756 (6th Cir. 2007)). Therefore, counsel is afforded a great deal of discretion in determining what witnesses to call and how they should be examined. *Id.*; *see also Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 848 (6th Cir. 2017). As with Moore's other IAC claims, "because the state court correctly identified and attempted to apply the *Strickland* standard, under AEDPA, we apply a doubly deferential standard." *Leonard*, 846 F.3d at 848 (citing *Van Tran v. Colson*, 764 F.3d 594, 624 (6th Cir. 2014)). Further, the Supreme Court has recently reiterated that strategic decisions such as the choice to hire or not hire an expert witness is entitled to a strong presumption of reasonableness. *Dunn v. Reeves*, 594 U.S. 731, 739 (2021). Finally, bald assertions and conclusory allegations are insufficient to support a claim for habeas relief or to warrant convening an evidentiary hearing. *See Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006).

Here, the Kentucky Court of Appeals analyzed this argument with the following:

> Appellant next argues that his counsel was ineffective in failing to call an expert
> witness who could testify regarding how long-term drug use affected Appellant,
> and the mitigating effects of such drug use. He asserts that an expert was available
> to be brought in from Duke University for trial and was prepared to testify as to
> how Appellant's drug use affected his behavior. According to Appellant, his trial
> counsel made the decision not to call the expert witness. Appellant argues that the
> testimony of this expert was vital to rebut the Commonwealth's only theory of the
> case, *i.e.*, that Appellant's drug use, in concert with growing animosity between

Appellant and his parents, led to the shootings.

Appellant does not demonstrate how expert witness testimony on the issue of Appellant's drug use would have had a mitigating effect as to the Commonwealth's case in chief, *i.e.*, the Commonwealth's theory that Appellant killed his parents as the culmination of growing animosity over Appellant's theft and drug use. In addition, though Appellant asserted before trial that a masked intruder killed his parents, he changed his theory at trial to self-defense and argued that his father killed his mother and then attempted to kill Appellant. Appellant does not reveal how expert testimony regarding Appellant's drug use would have bolstered a claim of self-defense. Further, "a trial counsel's choice of whether to call witnesses is generally accorded a presumption of deliberate trial strategy and cannot be subject to second-guessing in a claim of ineffective assistance of counsel." *Saylor v. Commonwealth*, 357 S.W.3d 567, 571 (Ky. App. 2012) (citation omitted). Again, Appellant has not demonstrated that there is a reasonable probability that but for counsel's alleged ineffective assistance on this issue, the outcome of the proceeding would have been different. *Strickland, supra*. We find no error.

*Moore*, 2023 WL 3134008 at *3. As the Court of Appeals explains, calling an expert to testify about Moore's drug use and the effects these drugs would have had on him during the relevant events of this case would have likely weakened Petitioner's main self-defense argument at trial. Moore has presented no evidence to rebut this analysis beyond his own conclusory statements that calling an expert witness on this issue would have rebutted the Commonwealth's theory of the case. [R. 1 at pg. 20].

While Moore does claim that counsel confessed to "dropp[ing] the ball" by failing to have an expert witness testify on his drug use, he fails to provide a citation to this statement or any evidence to substantiate this claim. [*See id.*]. Likewise, Moore does not explain what this witness would have testified to or how it would have affected the outcome of this case. Again, conclusory allegations alone are insufficient to justify the granting of habeas relief. Therefore, Moore has failed to present to show that the Court of Appeals' decision was an unreasonable application of the *Strickland* standard or that the decision to not call this witness was not reasonable or otherwise prejudiced the Petitioner. Therefore, this argument must fail.

**10. IAC Claim Relating to Appellate Counsel.**

Finally, Moore claims that his appellate counsel was also ineffective. [R. 1 at pgs. 22, 33]. Specifically, Moore asserts the following:

> Appellant Counsel's failures are two fold. (1) Appellant counsel failed to raise the issue of the trial court denying a continuance for five (5) months for the defense to obtain a mitigation specialist in a death penalty case; and (2) A continuance should have been granted to have the clothing of Warren Moore tested for DNA. Defense counsel had the opportunity to raise on Direct Appeal these meritorious issues that were preserved by objection but refused to do so. This refusal was objectively unreasonable in failing to pursue nonfrivolous issues on appeal. Appellant's counsel requested a continuance of five (5) months in order to obtain a mitigation specialist or allow a specialist needed time to review the case [and perform] DNA testing on Appellant's father's clothes. The trial court denied that request thus depriving Appellant of the opportunity to prepare and raise a complete defense as these arguments were ignored and clearly stronger than those presented. (1) The five (5) month continuance request was the result of Appellant's mitigation specialist at the time taking another job and leaving the defense without effective representation and the opportunity to present a complete defense to the state's accusations. Subsequently, at least eight (8) mitigation specialist submitted affidavits that revealed their inability to take Appellant's case due to inadequate time needed to prepare for trial.

[*Id.* at pgs. 22, 33].

"The standard for ineffective assistance of appellate counsel mirrors the one governing the performance of trial counsel. In order to prevail, [the petitioner] must demonstrate that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's deficient performance, there is a reasonable probability that the outcome of his appeal would have been different." *Cowans v. Bagley*, 639 F.3d 241, 252 (6th Cir. 2011) (citing *Goff v. Bagley*, 601 F.3d 445, 462–63 (6th Cir.2010)). However, "Appellant counsel is not required to raise every non-frivolous claim." *Haight v. Jordan*, 59 F.4th 817, 845–46 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 578, 217 L. Ed. 2d 307 (2024) (citations omitted). Therefore, to succeed on an IAC claim relating to appellate counsel's failure to raise an issue on appeal, the "petitioner must show that the omitted claim was stronger than the issues actually raised." *Id.* at 846 (citations omitted). Finally, Kentucky

law recognizes that the decision to grant a continuance is within the trial court's discretion and

abuse of that discretion will only be found if the "decision was 'arbitrary, unreasonable, unfair, or

unsupported by sound legal principles.'" *Taylor v. Commonwealth*, 611 S.W.3d 730, 735 (Ky.

2020) (quoting *Hilton v. Commonwealth*, 539 S.W. 3d 1, 10–11 (Ky. 2018)).

Here, as Hughes points out in his response, Moore's arguments for this claim appear to

rely on additional grounds and rationale than were not raised before the Court of Appeals [R. 16

at pg. 56], therefore for the reasons stated above, these new grounds are procedurally defaulted.

As for Moore's other arguments that are properly before this Court, the Kentucky Court of Appeals

previously held the following on his IAC claim relating to his appellate counsel:

> Appellant's third argument is that his appellate counsel was ineffective in failing to
> raise on appeal the trial court's denial of trial counsel's motion for a continuance.
> At trial, counsel made a request for a continuation to obtain a mitigation specialist
> and to perform DNA testing on the clothing of Appellant's father. The request was
> denied and Appellant asserts that appellate counsel was ineffective in failing to
> raise as error the denial of the continuance.
>
> There is "a strong presumption that appellate counsel's choice of issues to present
> to the appellate court was a reasonable exercise of appellate strategy." *Hollon v.
> Commonwealth*, 334 S.W.3d 431, 436 (Ky. 2010). The circuit court denied
> Appellant's motion for a continuance largely because Appellant had four years
> leading up to trial during which he could have developed a defense theory, engaged
> expert witnesses, and conducted DNA testing. Further, even if the DNA of
> Appellant's mother were found on his father's clothing, it is difficult to see how this
> would affect the outcome of the proceeding since Appellant argued at trial that his
> father shot his mother. Under Appellant's theory of the case, it would be plausible
> if not likely that his mother's DNA would be found on his father's clothing.
> Ultimately, the burden rests with Appellant to overcome the strong presumption
> that counsel prosecuted reasonable appellate strategy on appeal. *Id.* Appellant has
> not overcome this presumption and we find no error.

*Moore*, 2023 WL 3134008 at *4 (footnotes omitted). As Hughes points out in his Response, "in

Section II of Moore's appellate brief (addressing the mitigation expert) Moore stated that an expert

'was willing to fly in from Duke University to testify about the effects of the drug used by

Appellant and whether his drug use would cause him to commit the allegations against him."

(Appellant's Brief, A. 549.)[.]"' [R. 16 at pg. 57]. Therefore, from Moore's own appellate brief, it appears that a mitigation specialist was available and therefore a continuance on these grounds was not necessary.

As for the issue of a continuance to conduct DNA testing, as Hughes mentions in his Response, "Moore had sufficient time during the four years the case was pending pretrial to have the items tested, but did not do so." [*Id.* at pg. 60]. Likewise, Moore does not explain in his petition how this testing would have disproved the Commonwealth's theory of the case. Petitioner Moore has presented no evidence to indicate that testing Moore's father's clothing would have been exculpatory or would have otherwise changed the verdict in this matter. Additionally, even if the undersigned were to assume that testing the clothing in question would have shown that Moore's mother's DNA was on it, Moore has not explained how it would have supported his self-defense theory or rebutted the Commonwealth's theory at trial. Given the wide discretion the trial court has in this matter and the fact Moore has failed to demonstrate that his appeal would have been decided differently if these issues had been raised on appeal, he has failed to prove that appellate counsel was ineffective or that he was prejudiced. Because Moore has not shown that the Court of Appeals' determination on these issues was unreasonable, this argument must also fail.

**B**

Finally, while not explicitly argued, Moore appears to allege cumulative error to argue his trial and appellate counsel was ineffective. [*See generally* R. 1]. However, "because [Moore's] allegations of ineffective assistance are groundless, there is no need to conduct a cumulative error analysis." *United States v. Brumley*, No. 6:14-CR-00032-GFVT, 2017 WL 10637727, at *16 (E.D. Ky. Aug. 9, 2017), *report and recommendation adopted*, 2018 WL 6003863 (E.D. Ky. Nov. 15, 2018); *Arevalo v. White*, No. 5:14-CV-00415-HRW, 2016 WL 2929096, at *18 (E.D. Ky. Feb. 23, 2016) (noting that "where there are no errors and

no prejudice from any alleged errors, there can be no cumulative error"), *report and recommendation adopted*, 2016 WL 2853517 (E.D. Ky. May 13, 2016), *certificate of appealability denied*, 2017 WL 6760653 (Jul. 18, 2017), *cert. denied*, 138 S. Ct. 2594 (May 29, 2018). So, to the extent Moore has asserted a cumulative error claim, it must also fail.

## C

A Certificate of Appealability may issue where a movant made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find that the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039–40 (2003). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005). "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a Certificate of Appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, Moore has failed to demonstrate that reasonable jurists would find it debatable that he has stated a valid claim of the denial of a constitutional right or that the state courts were incorrect in their rulings. Therefore, the undersigned will recommend that the District Court deny a Certificate of Appealability.

## CONCLUSION

Moore petitioned the Court for a writ of certiorari under Section 2254. [R. 1]. However, Moore has failed to demonstrate that he is entitled to habeas relief. Therefore, this Court will

recommend the District Court deny Moore's (1) Section 2254 petition and (2) Certificate of Appealability, if Moore requests one.

**RECOMMENDATION**

Upon review of the record, and for the reasons stated herein, and in accordance with Rule 10 of the Rules Governing Section 2254 Habeas Cases, **IT IS RECOMMENDED** that:

1. Moore's Section 2254 petition [R. 1] be **DISMISSED WITH PREJUDICE**; and

2. A Certificate of Appealability be **DENIED** as to all issues raised, should Moore so request.

*** *** *** ***

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must be filed within fourteen days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Ann*, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(1).

Signed June 3, 2024.



**Signed By:**

**_Edward B. Atkins_**

**United States Magistrate Judge**